# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00231-CV

**J. T., Appellant**

**v.**

**Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
### NO. C2012-0351D, HONORABLE BERT RICHARDSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant J.T. appeals from the district court's order terminating his parental rights to his infant daughter, A.T. J.T.'s court-appointed counsel has filed a motion to withdraw and an *Anders* brief, concluding that the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *see also Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). Counsel's brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating that there are no arguable grounds for appeal. *See Anders*, 386 U.S. at 744; *Taylor*, 160 S.W.3d at 646-47. J.T. was provided with a copy of counsel's brief and was advised of his right to examine the appellate record and to file a pro se brief. In response, J.T. has filed a pro se brief, challenging the sufficiency of the evidence supporting the district court's findings on the grounds for termination.

In its termination decree, the district court found by clear and convincing evidence that termination of J.T.'s parental rights was in the best interest of the child and that J.T. had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) constructively abandoned the child; (4) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child; and (5) knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See* Tex. Fam. Code § 161.001(1)(D), (E), (N), (O), (Q), (2). In the same decree, the district court also ordered the termination of the parental rights of A.T.'s biological mother, Ashley Medellin.[1]

The case was tried before the bench, which heard evidence tending to show that J.T. had a history of drug use, criminal conduct, and other behavior that endangered A.T.'s physical and emotional well-being. Susan Landrum, the caseworker with Child Protective Services (CPS) who had investigated the case, testified that J.T. had admitted to law enforcement officers that he had used drugs while the case was ongoing. Additionally, according to Landrum, J.T. had an extensive criminal history dating back to when he was a juvenile, which included arrests for burglary of a habitation in 2003, unlawfully carrying a weapon in 2004, burglary of a vehicle in 2005, theft of

---

[1] Medellin did not personally appear at the termination trial, nor has she filed a notice of appeal from the termination order.

property in 2006, criminal mischief in 2007, intoxication assault with a vehicle in 2008,[2] unauthorized use of a vehicle in 2011, and arson of a vehicle in 2012. The arson offense had resulted in a felony conviction and an eight-year prison sentence, which J.T. is currently serving.

A.T. was born in March 2012. According to Landrum, the Department took custody of A.T. "shortly after the birth" of the child because of the risk that the Department believed the biological parents posed to the child.[3] Specifically with regard to J.T., the Department had "concerns that he continued to be using meth and marihuana which he had admitted to using during the investigation related to [N.H., Medellin's other child]." Additionally, Landrum testified, J.T. had "both a long criminal history as well as a previous CPS history regarding his first child,[4] so that history along with—combined with the fact that he was not in touch with us gave the Department a great deal of concern about [A.T.'s] safety."

---

[2] J.T.'s intoxication-assault offense had occurred while he was being investigated for allegedly abusing and neglecting a different child of his, a son, who was three months old at the time of the offense. During this investigation, the infant had been placed temporarily in the care of the child's paternal grandmother. While intoxicated, J.T. had retrieved his son from the child's grandmother, driven off with the infant in a motor vehicle, and had a collision.

[3] The evidence tended to show that both Medellin and J.T. had a history of drug use. While Medellin was pregnant with A.T., she was under investigation by the Department for the neglect of another child in her care, N.H. Landrum was also the caseworker in the investigation involving N.H., which ultimately resulted in the termination of Medellin's parental rights to that child. During that investigation, Landrum testified, Medellin and J.T. had lived together with N.H. in a house that Landrum characterized as "filthy," with "marihuana out in the open in practically every room within reach of a toddler," "rotting food," and a bathroom "overflowing with feces and urine." Medellin and J.T. had been evicted from this house prior to A.T.'s birth.

[4] J.T.'s first child had been in J.T.'s motor vehicle while J.T. was driving intoxicated. Although J.T.'s parental rights to this child were not terminated, according to Landrum, the Department had found "reason to believe" that J.T. had abused or neglected the child.

3

After the Department first took custody of A.T., the district court held an adversary hearing in April 2012, which J.T. had attended. However, after that, the Department did not have any further contact with J.T. until late August 2012, when he wrote a letter to the Department from the Comal County Jail "requesting involvement in the case." The Department eventually prepared a service plan by which J.T. might obtain eventual reunification with A.T. The plan, which took into account J.T.'s incarceration status, required him, among other things, to "attend and participate in all education programs provided by the Texas Department of Corrections or the county jail while he was incarcerated." According to Landrum, J.T. did not comply with the plan. Specifically, Landrum explained, J.T.'s "lack of contact or interest in his child for the first five months that his child was in our custody [indicates] a significant lack of overall compliance." Additionally, Landrum testified, J.T. was unable to comply because of the lack of parenting-education resources available at the Comal County Jail. However, Landrum believed that if J.T. had kept in touch with the Department in the five months following the adversary hearing, he would have been able to "work the service plan" prior to his incarceration. Landrum agreed with the Department's characterization of J.T.'s behavior as having "abandoned [J.T.] into the care of the Department," and she believed that J.T. was in "complete . . . denial that he has a responsibility for the child being in the situation that she is in today."

Landrum further testified that J.T. has demonstrated an inability to provide a safe environment for the child. Landrum based her assessment on J.T.'s "failure to inquire about his child for that five month period of time and that he cannot care for the child at this point because he is incarcerated currently and has been and will be for some time." The assessment was also based

on J.T.'s "pattern of arrest and release from jail," which, Landrum believed, demonstrated instability and an inability to provide a safe environment for the child. For these and other reasons, Landrum believed that termination of J.T.'s parental rights was in the best interest of the child. Landrum explained that A.T. had been placed with the child's maternal great aunt and great uncle, who are in their thirties, and that the child is "very well-bonded with them." If termination were to occur, Landrum added, the great aunt and great uncle would be willing to adopt the child.

J.T. also testified. J.T. denied using drugs during the pendency of this case but admitted that he had used methamphetamines in the past. J.T. also admitted to writing a letter in which he had claimed that he was "on the run from the law" and that he and Medellin "were both on drugs" while the case was ongoing.[5] J.T. also disclaimed responsibility for the arson offense for which he had been convicted—notwithstanding the fact that he had pleaded guilty to the offense. Instead, J.T. claimed, his brother was to blame.

J.T.'s mother, Christine Perdue, who was seeking to be named A.T.'s possessory conservator while her son was incarcerated, also testified. Perdue admitted that J.T. had a drug problem "in the past" and believed that this drug problem had contributed to his criminal behavior. She also admitted that all three of her sons have had drug problems and have ended up incarcerated.

The final witness to testify at the termination hearing was Lauren Townsend, the Court Appointed Special Advocate (CASA) supervisor in the case. Townsend testified that A.T. was

---

[5] The period of time in which J.T. was "on the run from the law" corresponded to the five-month period when he was not in contact with the Department. According to the evidence presented, during this time, J.T. was living with Medellin in Dallas and had an open, active warrant for his arrest relating to the arson offense.

"doing really well" in her current placement and that, in her view, it was in the child's best interest to have the rights of her biological parents terminated to clear the way for the current placement to adopt the child.

Having reviewed the record, counsel's brief, and J.T.'s pro se brief, we agree that the appeal is frivolous, including the issue that J.T. raises in his pro se brief regarding the sufficiency of the evidence. We find nothing in the record that might arguably support the appeal. *See Anders*, 386 U.S. at 741-44; *Taylor*, 160 S.W.3d at 646-47. We affirm the district court's order of termination and grant counsel's motion to withdraw.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: August 15, 2013

6